$400 LS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

17 2992

| | |
|---|---|
| **Jared Reppert**<br>217 Tulpehocken Avenue<br>West Reading, PA 19611,<br>    Plaintiff<br><br>v.<br><br>**Empire Building Products Inc.**<br>**T/A Empire Surplus Home Center**<br>1416 Carbon Street<br>Reading, PA 19601<br><br>and<br><br>**Harry J. O'Neill, IV**<br>415 McCoy Lane<br>Leesport, Pa 19533<br>    Defendants | Civil Action<br><br>No. 17 - _____<br><br>Assigned to: _____, J. |

## COMPLAINT

Jared Reppert, Plaintiff, by his attorney, Jana R. Barnett, Esq., sues Empire Building Products, Inc., trading as Empire Surplus Home Center; and Harry J. O'Neill, IV, and alleges as follows:

### I. INTRODUCTION

1. This is an action seeking redress for violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201, *et seq.*, as well as redress for violations of state statutes arising out of the same case or controversy.

2. With regard to the Fair Labor Standards Act claims, Jared Reppert seeks equitable and monetary relief for the unlawful actions of Empire Building Products, Inc., trading as Empire Surplus Home Center (a fictitious name), including back pay, liquidated damages, attorney's fees and expenses, and all other relief to which he is entitled pursuant to the Fair Labor Standards Act.

3. Mr. Reppert seeks additional relief for his state law claims.

-1-

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's Fair Labor Standards Act claims pursuant to 28 U.S.C. §1331, and 29 U.S.C. § 216(b).

5. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 because the claims arising under state law are so related to the claims arising under Fair Labor Standards Act that they form the same case or controversy.

6. Venue in this district is appropriate pursuant to 28 U.S.C. §1391(b). The unlawful acts and practices of Empire Building Products, Inc. were committed within the Eastern District of Pennsylvania (specifically, Berks County).

## III. PARTIES

7. Plaintiff Jared Reppert is an adult citizen of the Commonwealth of Pennsylvania who resides in Berks County, Pennsylvania. His address is 217 Tulpehocken Avenue, West Reading, PA 19611.

8. Defendant Empire Building Products, Inc. ("Empire") is a Pennsylvania corporation located at 1416 Carbon Street, Reading, PA 19601. It trades as the "Empire Group", which group consists of Berks Transfer, Delaware Valley Contractors, Inc., Elk Environmental Services, Empire Services, Delaware Valley Utility Contractors, and Empire Surplus Home Center. The retail operation known as Empire Surplus Home Center is located at 2741 Bernville Road, Leesport, Berks County, Pennsylvania 19533. Empire Surplus Home Center is a fictitious name.

9. Defendant Harry J. O'Neill, IV ("Mr. O'Neill") is a Vice President of Empire Building Products, Inc. He is the highest ranking person at Empire Surplus Home Center, and had operational control. Mr. O'Neill resides at 415 McCoy Lane, Leesport (Berks County), Pa 19533.

## IV. FACTUAL BACKGROUND

10. Jared Reppert began working for Empire Building Products, Inc. on or about June 4, 2012.

11. Mr. Reppert's employment with Empire Building Products, Inc. on or about March 18, 2016.

12. Mr. Reppert worked at the Empire Surplus Home Center throughout his employment by Empire Building Products, Inc.
13. Throughout Mr. Reppert's employment with Empire Building Products, Inc., he worked as a Kitchen Designer / Retail Sales Representative.
14. According to the letter sent from Empire Building Products to Mr. Reppert dated May 18, 2012:
    a. the job purposes were to (1) represent Empire Building Products' goods and services to both new and existing customers in the Retail division as directd by the Retail Sales Manager; (2) engage in all aspects of the product sales cycle including, but not limited to, retail floor sales, Internet sales, cold calling, lead generation, lead follow-up, proposal and quote generation, sales order generation, marketing material distribution, and collections efforts as requested; (3) attend meetings and contribute to company strategy and policy-making as required; and (4) develop personal skills and capability through on-going training, as provided by the company or elsewhere subject to Company approval;
    b. Commissions are payable for each full month worked; and
    c. Mr. Reppert accrued vacation time at the rate of 1.54 hours per pay period (or two (2) weeks per year), and thereafter in accordance with the Empire Building Products Employee Handbook.
15. Mr. Reppert's actual duties included opening; closing; meeting with clients to discuss a kitchen, bathrooms and offices to be designed; measuring rooms to be renovated or built; laying out kitchens; discussing options for cabinetry and countertops, flooring, backsplash, and sinks; cutting countertops to size using a special saw; preparing bids for materials to be provided to apartment complexes or schools; answering telephones; assisting walk-in customers; operating two forklifts to stock inventory on shelves; unloading stock from delivery trucks; cleaning products and the aisles; stocking the shelves; tagging products; sweeping areas; cleaning dirt from shower stalls; hanging carpet; hanging prices in the aisles; making sure that displays were clean and damage-free; taping open boxes in the aisles; putting stock away; and loading customers' orders into their vehicles.

16. Throughout his employment by Empire Building Products, Inc., Mr. Reppert's compensation was a combination of salary and commissions.
17. Throughout his employment, Mr. Reppert's salary was thirty-five thousand dollars ($35,000) per year.
18. Throughout Mr. Reppert's employment, Empire's work week began on Wednesdays and ended on Tuesdays.
19. Mr. Reppert received what Empire designated his "regular pay" every Friday. Mr. Reppert's regular pay was thirty-five thousand dollars ($35,000.00) divided by fifty-two (52), or six hundred seventy-three dollars and seven cents ($673.07) gross per week.
20. Mr. Reppert does not have time sheets, but he believes that he worked an average of fifty (50) hours per week fifty (50) weeks per year.
    a. Melinda O'Neill told Mr. Reppert that he was expected to work at least forty-five (45) to fifty (50) hours per week.
    b. Harry O'Neill, IV prepared work schedules.
    c. Empire Building Products, Inc.'s work schedules routinely scheduled Mr. Reppert to work six (6) days per week.
    d. Mr. Reppert recalls being scheduled to open and close three (3) to four (4) days per week (on days when the Empire Surplus Home Center was open for eleven (11) hours), and being scheduled to work eight (8) hour shifts on the other two (2) or three (3) days.
    e. Mr. Reppert often worked later than he was scheduled. For example, when he was responsible for closing, Mr. Reppert could not leave until the last transaction was completed. Furthermore, management sometimes required that he restock shelves or clean aisles before leaving.
    f. Mr. Reppert added the hours which he and his coworkers had been scheduled to work, and found that he had been scheduled to work the highest number of hours. When he brought this to the attention to his supervisor, Harold Neider, Mr. Neider did not deny that Mr. Reppert's calculations were accurate. Rather, Mr. Neider responded by asking Mr. Reppert why he didn't go make sales rather than sitting there and adding up hours.
21. Mr. Reppert rarely took lunch breaks.

a. The Empire Group Employee Information Manual states that, "All full-time office employees are provided with an unpaid hour for lunch. All full-time field employees are provided with one unpaid thirty (30) minute meal period each workday. Supervisors will schedule meal periods to accommodate operating requirements. Employees will be relieved of all active responsibilities and restrictions during meal periods and will not be compensated for that time."
   b. Mr. Reppert's supervisors never scheduled meal periods for him.
   c. Mr. Reppert rarely left the premises for lunch.
   d. When Mr. Reppert remained on the premises for lunch, he was rarely relieved of all active responsibilities and restrictions during meal periods. Empire did not provide a lunch room or break room for employees, and expected Mr. Reppert and other employees to interrupt their lunch whenever customers, co-workers, supervisors, vendors or others sought their attention.
22. Mr. Reppert usually clocked in and out when he arrived and left work.
23. The Empire Group of Reading, PA Employee Information Manual states that, "Each employee is designated as either NONEXEMPT or EXEMPT from federal and state wage and hour laws. NONEXEMPT employees are entitled to overtime pay under the specific provisions of federal and state laws. . . ."
24. Neither Empire nor Mr. O'Neill investigated the company's obligations under the Fair Labor Standards Act regarding kitchen designers and/or inside salesmen by consulting with a labor or employment attorney, consulting with the Department of Labor, conferring with a human resources expert, or attending a seminar concerning obligations under the Fair Labor Standards Act.
25. When it gave the Employee Information Manual to Mr. Reppert, Empire and Mr. O'Neill knew that:
   a. Mr. Reppert's primary duty was not managing the enterprise, or managing a customarily recognized department or subdivision of the enterprise; that Mr. Reppert did not customarily and regularly direct the work of at least two or more other full-time employees or their equivalent; and that Mr. Reppert did not have the authority to hire or fire other employees, and that Mr. Reppert's suggestions and

recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees was not given particular weight.

    b. Mr. Reppert's primary duties were not directly related to the management or general business operations of Empire or Empire's customers, and that his primary duties did not include the exercise of discretion and independent judgment with respect to matters of significance.

    c. Mr. Reppert's primary duty was not the performance of work requiring advanced knowledge (defined as work which is predominantly intellectual in character and which includes work requiring the consistent exercise of discretion and judgment in the field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction);

    d. Mr. Reppert was not employed as a computer systems analyst, computer programmer, software engineer or other similarly skilled worker in the computer field;

    e. Mr. Reppert was not an outside salesman; and

    f. Mr. Reppert was not paid total annual compensation of at least one hundred thousand dollars ($100,000.00) per year.

26. Although Empire knew that (a) it routinely scheduled Mr. Reppert to work more than forty (40) hours per week, (b) Mr. Reppert worked at least as many hours as scheduled, ( c) Mr. Reppert clocked in and out, and (d) Mr. Reppert was a non-exempt employee, Empire did not compensate Mr. Reppert for hours worked in excess of forty (40) at the rate of time and a half.

27. With regard to commissions, throughout the term of Mr. Reppert's employment, Empire established the commissions which it would pay Mr. Reppert in addition to his salary.

28. Initially, Empire Building Products, Inc. paid Mr. Reppert a commission of two per cent (2%) of all of his sales.

29. Empire Building Products, Inc. changed the commissions payable to Mr. Reppert such that he was required to have minimum gross sales and minimum gross profits in order to earn a commission.

30. During the years 2013, 2014 and 2015, Empire Building Products, Inc. never paid Mr. Reppert more than $40,250.

31. Mr. Reppert's commissions were less than fifty per cent (50%) of his compensation.

-6-

32. When Empire deemed commissions to be payable to Mr. Reppert, Empire paid those commissions on the third Friday of the month.
33. Assuming that Mr. Reppert worked an average of fifty (50) hours per week for fifty (50) weeks per year, Empire Building Products, Inc. owes Mr. Reppert at least $8,661.87 in unpaid overtime wages for the period July 1, 2015 through March 18, 2016, and at least $11,025 in unpaid overtime wages for the period July 1, 2014 through June 30, 2015.
34. Empire did not pay Mr. Reppert time and a half for those commissions, to the extent that they reflected work done in excess of forty (40) hours per week.
35. Empire did not pay Mr. Reppert commissions for sales made in February 2016.
36. Empire did not pay Mr. Reppert for vacation which was earned but not taken at the time that his employment terminated.
37. Mr. Reppert rarely took vacation.
38. At one time, Melinda O'Neill told Mr. Reppert that he was not permitted to take vacation because his sales were not high enough.
39. During the period July 1, 2014 through June 30, 2015, Mr. Reppert earned at least eighty (80) hours of vacation (1.54 hours/week times 52 weeks).
40. During the period July 1, 2015 through March 18, 2016, Mr. Reppert earned at least fifty-seven and a half (57.5) hours of vacation (1.54 hours/week times 37.33 weeks).
41. Mr. Reppert had at least one hundred thirty-seven and a half (137.5) hours of earned but unused vacation at the time that his employment with Empire Building Products, Inc. terminated.

VI. **CLAIMS**

**FIRST COUNT**

**JARED REPPERT v.
HARRY J. O'NEILL, IV AND EMPIRE BUILDING PRODUCTS, INC.**

**(Violation of Fair Labor Standards Act of 1938, as amended
29 U.S.C. §201, et seq.)**

42. Paragraphs 1 through 41 are incorporated by reference.

43. Plaintiff Jared Reppert is an employee within the meaning of the Fair Labor Standards Act.
44. Defendant Empire Building Products, Inc. is an employer within the meaning of the Fair Labor Standards Act.
    a. It is engaged in interstate commerce, selling goods or materials that have been moved in or produced for interstate commerce.
    b. Its annual dollar volume of business exceeded five hundred thousand dollars during each of the past three years.
45. Defendant Harry J. O'Neill, IV is an employer within the meaning of the Fair Labor Standards Act.
    a. He was an officer of Empire Building Products, Inc. and had operational control of Empire Surplus Home Center.
    b. Mr. O'Neill is a person who acted (directly and/or indirectly) in the interest of Empire in relation to Mr. Reppert.
    c. Mr. O'Neill had the power to hire and fire Mr. Reppert. Mr. O'Neill had the power to suspend Mr. Reppert.
    d. Mr. O'Neill had ultimate control of Mr. Reppert's work schedule.
    e. Mr. O'Neill decided that Mr. Reppert would not be paid for time worked in excess of forty (40) hours/week, and that he would not be paid for lunch breaks during which he worked.
    f. Mr. O'Neill determined the rate and method of Mr. Reppert's compensation.
    g. As an employer, Mr. O'Neill was jointly and severally liable - in his individual capacity - for unpaid wages, and other damages under the Fair Labor Standards Act.
46. Empire Building Products, Inc. was required by law to pay Mr. Reppert for all time worked and for at least one and one-half times his regular rate of pay for hours worked in excess of forty (40) hours per week.
47. Mr. Reppert's regular rate of pay consisted of the weekly payments, as well as the monthly commissions (pro rated weekly).
48. Empire Building Products, Inc. failed to pay Mr. Reppert for time worked in excess of forty (40) hours per week for either the weekly payments or the monthly commissions.

WHEREFORE Mr. Reppert prays that this Honorable Court enter an order granting him:

a. Unpaid compensation (including but not limited to all time worked in excess of forty (40) hours per week at the rate of time and a half) for the past three (3) years;
   b. Liquidated damages;
   c. Attorney's fees and expenses;
   d. Interest; and
   e. Such other and further relief to which he is entitled by law.

## SECOND COUNT

## JARED REPPERT v.
## HARRY J. O'NEILL, IV AND EMPIRE BUILDING PRODUCTS, INC.

## VIOLATION OF THE PENNSYLVANIA MINIMUM WAGE ACT OF 1968, 43 P.S. §333, *et seq.*

49. Paragraphs 1 through 41 are incorporated by reference as though set forth in full.
50. Plaintiff Jared Reppert is an employee within the meaning of the Pennsylvania Minimum Wage Act of 1968.
51. Defendant Empire Building Products, Inc. is an employer within the meaning of the Pennsylvania Minimum Wage Act, in that it was a corporation . . . acting, directly or indirectly, in the interest of an employer in relation to any employe.
52. Defendant Harry J. O'Neill, IV is an employer within the meaning of the Pennsylvania Minimum Wage Act, in that he was an individual acting, directly or indirectly, in the interest of an employer in relation to any employe. He was an officer of Empire Building Products, Inc. and had operational control of Empire Surplus Home Center. Mr. O'Neill is a person who acted (directly and/or indirectly) in the interest of Empire in relation to Mr. Reppert. Mr. O'Neill had the power to hire and fire Mr. Reppert. Mr. O'Neill had the power to suspend Mr. Reppert. Mr. O'Neill had ultimate control of Mr. Reppert's work schedule. Mr. O'Neill decided that Mr. Reppert would not be paid for time worked in excess of forty (40) hours/week, and that he would not be paid for lunch breaks during which he worked. Mr. O'Neill determined the rate and method of Mr. Reppert's compensation. As an employer, Mr. O'Neill was jointly and severally liable - in his

individual capacity - for unpaid wages, and other damages under the Pennsylvania Minimum Wage Act.

53. Mr. Reppert was not exempt from the overtime requirements of the Pennsylvania Minimum Wage Act.
54. Empire Building Products, Inc. was required by law to pay Mr. Reppert for all time worked and at least one and one-half times his regular rate of pay for hours worked in excess of forty (40) hours per week.
55. Mr. Reppert's regular rate of pay consisted of the weekly payments, as well as the monthly commissions (pro rated weekly).
56. Empire Building Products, Inc. failed to pay Mr. Reppert for all time worked, and failed to pay Mr. Reppert at the rate of time and a half for time worked in excess of forty (40) hours per week for either the weekly payments or the monthly commissions.

WHEREFORE Mr. Reppert prays that this Honorable Court enter an order granting him:

a. Unpaid compensation (including but not limited to all time worked in excess of forty (40) hours per week at the rate of time and a half, and earned but unpaid commissions and bonus) for the past three (3) years;
b. Liquidated damages;
c. Attorney's fees and expenses;
d. Interest; and
e. Such other and further relief to which he is entitled by law.

### THIRD COUNT

### JARED REPPERT v.
### HARRY J. O'NEILL, IV AND EMPIRE BUILDING PRODUCTS, INC.

### VIOLATION OF THE WAGE PAYMENT AND COLLECTION LAW, 43 P.S. §260, et seq.

57. Paragraphs 1 through 41 are incorporated by reference as though set forth in full.
58. Harry J. O'Neill, IV and Empire Building Products, Inc. are "employers" within the meaning of the Pennsylvania Wage Payment and Collection Law.

59. Harry J. O'Neill, IV and Empire Building Products, Inc. had a legal obligation under the Wage Payment and Collection Law to pay employees such as Mr. Reppert all wages due him on regular paydays designated in advance by the Employer.

60. Harry J. O'Neill, IV and Empire Building Products, Inc. failed to pay Mr. Reppert for:

    a. Time worked in excess of forty (40) hours per week;
    b. Time and a half wages due him for time worked in excess of forty (40) hours per week;
    c. Commissions due for February 2016; and
    d. Earned but unused vacation.

61. Calculated at the rate of $15.00/hour, Empire Building Products, Inc. owed Mr. Reppert $2,062.50 for earned but unused vacation ($15.00 x 137.5 hours).

WHEREFORE Mr. Reppert prays that this Honorable Court enter an order granting him:

a. Unpaid compensation (including but not limited to all time worked in excess of forty (40) hours per week at the rate of time and a half, and earned but unpaid commissions and earned but unused vacation for the past three (3) years;

b. Liquidated damages;

c. Attorney's fees and expenses;

d. Interest; and

e. Such other and further relief to which he is entitled by law.

Jana R. Barnett, Esquire
Attorney for Plaintiff
Supreme Court of Pa. I.D. 73189
Law Offices of Jana R. Barnett
1238 Cleveland Avenue
Wyomissing, PA 19610-2102
P: 610/478-1860
F: 610/478-0453
C: 484/332-4002
JRB@JanaRBarnettEsq.com

Dated: June 28, 2017